HAGAR and DERBY *vs.* KING.

K., S. & Co., copartners, being indebted to the plaintiffs in the sum of $8207.75,
K., one of the firm, agreed by parol, with the plaintiffs, that in considera-
tion that the latter would receive $10,000 of the bonds of a rail road com-
pany, in payment of such indebtedness of the firm, he, K., would at a future
day, at the plaintiff's request, purchase the same bonds of them, and pay
them therefor the said sum of $8207.75. *Held* that the agrreement was
within the statute of frauds, and void, for the reason that it was not in
writing, and no part of the purchase money was paid. JOHNSON, J. dis-
sented.

*Held, also,* that the plaintiffs could not recover, upon the contract for the pur-
chase of the bonds, without proof of a tender of the bonds, or of a demand
pon the defendant, of performance.

THIS was an appeal from a judgment entered at the cir-
cuit, upon a verdict. The complaint alleged that in
December, 1853, the firm of King, Stancliffe & Co., of which
firm the defendant was a member, were indebted to the
plaintiffs in the sum of $8207.75 for work performed by the
plaintiffs in graveling a portion of the Canandaigua and
Niagara Falls rail road. That the plaintiffs received in
payment of said debt, from the rail road company, their
bonds to the amount of $10,000, upon the promise and
agreement of the defendant, that in consideration that they
would receive said bonds in payment of their debt, he would
at any time after two weeks, at the request of the plaintiffs,
take and purchase said bonds of the plaintiffs and pay them
therefor the said sum of $8207.75, with interest; in consid-
eration of which promise, in January, 1854, the plaintiffs
did receive the bonds in payment of the debt. That after
the two weeks had elapsed the plaintiffs requested the defend-
ant to purchase the bonds of them, according to the agree-
ment, which he refused to do; except that on the 20th of
February, 1854, the defendant paid the plaintiffs $100 to
apply on the sum so agreed to be paid, and they transferred
to him one of the bonds. That in June, 1854, the plaintiffs
received the further sum of $350 to apply on said sum agreed
to be paid by the defendant for the bonds. That the plain-

tiffs are ready and willing, and at all times have been, to transfer and deliver the remainder of the bonds to the defendant, on his performing his agreement; and they demanded judgment for $8014, and interest from June 1, 1854. The answer denied every allegation of the complaint. The cause was tried at the Ontario circuit, in May, 1860, before Justice JOHNSON and a jury. Upon the trial, it appeared by the testimony of the two plaintiffs, Hagar and Derby, that in May or June, 1853, the plaintiffs made a parol agreement with King, Stancliffe & Co. to gravel a portion of the Canandaigua and Niagara Falls rail road, from Batavia west, to Tonawanda; under which agreement they worked from June to November, of that year, and that monthly estimates were made, of their work, by Mr. Porter, the chief engineer of the rail road company, which estimates were paid by King, Stancliffe & Co. until November. That the final estimate amounted to about $8200. That the defendant King wished the plaintiffs to take from the rail road company, for this indebtedness, their mortgage bonds in payment of the debt. That they declined for some time to do so, but on the 19th of December, 1853, an arrangement was made between the plaintiffs and King, by which they were to take $10,000 of the bonds of the rail road company, for their debt; and King agreed that if they would take the bonds, he would, in the course of ten days, take the bonds of them and give them the money for them. That in pursuance of this agreement they took an order for the bonds and obtained them from the rail road company, and afterwards presented them to the defendant, and asked him to pay the money; that he postponed doing so, for a time, and finally refused. They also testified that their claim against King, Stancliffe & Co. was relinquished by the receipt of the bonds, and the promise of the defendant; that they received from the rail road company one installment of interest on the bonds, being interest for six months. At the time of the settlement, in December, 1853, the plaintiffs received from S. Rand, vice president of

the rail road company, a due-bill for the amount of this claim, $8207.75, payable in bonds, and gave him a receipt for all demands for graveling the road. This due-bill was indorsed by the plaintiffs, and delivered to the treasurer of the rail road company, who issued to them the bonds; and these papers were produced by the receiver of the rail road company, from their vouchers. Upon the trial of the cause they did not produce the bonds, or offer them in evidence; and they admitted that they had only $7900 of them in their possession.

The plaintiffs having rested, the defendant moved for a nonsuit, on the following grounds: 1. That the agreement claimed to have been proved by the testimony was void, there being no consideration for it. 2. That it was a parol agreement to answer for the debt of a third party, and therefore void. 3. That the contract as proved was a parol agreement for a sale by the plaintiffs, and a purchase by the defendant, of ten thousand dollars of bonds, for the sum of $8270.75, and was void. 4. That if it was a valid contract, there was no evidence of a performance on the part of the plaintiffs. That there was no evidence of a tender of the bonds to the defendant, or of a demand upon him to fulfill the contract on his part. 5. That there was no evidence that the plaintiffs, at the time of the commencement of this action, had or that they now have the bonds, or that they can produce them, or comply with the contract on their part. That the plaintiffs cannot keep the bonds and ask for a verdict against the defendant. 6. That there was no evidence upon which a proper rule of damages could be laid down.

The court denied the motion for a nonsuit, and the defendant excepted. The jury found a verdict in favor of the plaintiffs for $11,348.88, and the defendant appealed from the judgment.

*H. O. Chesebro*, for the appellant. I. The alleged agreement, for the breach of which the action is brought, was void,

Hagar *v.* King.

by the statute, there being no note or memorandum in writing of the agreement, signed by the parties, nor any acceptance or receiving of any of the bonds by the alleged purchaser, at the time, nor any payment by the purchaser, of any part of the purchase money. (2 *R. S. 3d ed.* 195, § 3. *Shindler* v. *Houston,* 1 *Comst.* 261. *McKnight* v. *Dunlop,* 1 *Selden,* 537.)

II. The fact that the defendant was a member of the firm of King, Stancliffe & Co. at the time of the alleged agreement with the plaintiffs, does not affect the case. There was no consideration for the promise, even at common law. But, if it should be held that there was sufficient consideration to uphold the promise at common law, it is nevertheless void by the statute, for not being in writing. (*Mallory* v. *Gillett,* 23 *Barb.* 610; *S. C.,* 21 *N. Y. Rep.* 412, 430. *Nelson* v. *Boynton,* 3 *Metc.* 396. *Thompson* v. *Alger,* 12 *id.* 428.)

III. The plaintiffs should have been nonsuited upon the 5th ground of the defendant's motion.

IV. When the plaintiffs rested, they had produced no evidence upon which a proper rule of damages could be laid down, and they should have been nonsuited upon that ground. They made no proof of the value of the bonds at or about the time of the refusal of the defendant to take them, nor any proof upon which the proper rule of damages could have been given to the jury. If the plaintiffs were entitled to recover at all, their damages were the difference between the value of the bonds at the time of the refusal of the defendant to comply with the contract, on his part, and the price he was to pay for them. (*Dana* v. *Fiedler,* 2 *Kernan,* 40, 48. *Thompson* v. *Alger,* 12 *Metc.* 428. *Stewart* v. *Cauty,* 8 *Mees. & Wels.* 160. *Boorman* v. *Nash,* 9 *Barn. & Cress.* 145; 17 *Eng. Com. Law Rep.* 73. *Shannon* v. *Comstock,* 21 *Wend.* 457.) They could not hold the bonds five years after the refusal of the defendant to take them, and until they became valueless, and then recover the full contract price.

*J. C. Smith*, for the respondents. I. The discharge or extinguishment of the debt against the *firm* of King, Stancliffe & Co. was a good consideration for the defendant's promise. (2 *Am. Lea. Cas.* 184, *and cases there cited.*) So was the agreement to give the defendant *time* for its payment, it being due presently from the firm. (*Id.* 184, 185.)

II. The agreement between the parties was not a sale, or a contract for the sale of the bonds in question by the plaintiffs to the defendant, within the meaning of the statute of frauds, (2 *R. S.* 136, § 3; *Pars. on Cont.* 450; *Hilliard on Sales*, 26;) but a mode adopted by them for the payment by the defendant of the debt owing to the plaintiffs. (*See Taft* v. *Sergeant*, 18 *Barb.* 320, 323.) The plaintiffs did not become the absolute owners of the bonds. If the bonds had risen in value, the defendant would have had a right to *redeem* them, on paying or tendering the amount of the debt within the time allowed by the agreement. And his judgment creditors would have had such right, on showing a want of other assets to satisfy their executions.

III. The defendant's promise was not one for the payment of the debt of *another*, within the meaning of the statute of frauds. (1.) He was already liable for the debt, jointly with the other members of the firm. (2 *Pars. on Cont.* 305, 6, 7. *Costling* v. *Aubert*, 2 *East*, 325. *Files* v. *McLeod*, 14 *Ala. Rep.* 611.) (2.) The promise was founded on a new and distinct consideration. (*Leonard* v. *Vredenburgh*, 8 *John.* 39, *and cases cited in note. Roberts on Frauds*, 232.)

IV. The plaintiffs were entitled to recover without returning or producing the bonds at the trial. (1.) The offer of the plaintiffs to return the bonds at the time required by the contract, and the defendant's refusal to receive them and pay the debt, gave the plaintiff a complete and immediate right of action for the money. (*See Slingerland* v. *Morse*, 8 *John.* 474; *Case* v. *Green*, 5 *Watts*, 262.) The defendant cannot defeat this right of action by a subsequent demand and refusal; especially if made after suit commenced and at the

trial; for the plaintiffs were not bound, as in a tender of money, to keep their tender always ready. (*See Lamb* v. *Lathrop*, 13 *Wend.* 95; *Zinn* v. *Rowley*, 4 *Barr*, 109.) By the offer and refusal, the title of the bonds became absolute in the defendant, and the plaintiffs held them, thereafter, as his bailees. A subsequent *conversion* by them of a part of the bonds is no bar to this action. At most, it only gives the defendant an action for his *damages*, which cannot exceed the value of the bonds at the time of conversion. (2.) The bonds were of no value, after the rail road was sold, in 1858.

WELLES, J. The contract between the plaintiffs and the defendant, upon which the judgment was recovered, was, substantially, that in consideration that the plaintiffs would receive the $10,000 of rail road bonds in payment of the indebtedness of King, Stancliffe & Co. to the plaintiffs of $8207.75, the defendant would at a future day, at the plaintiff's request, purchase the same bonds of the plaintiffs, and pay them therefor the said sum of $8207.75, &c. The action is upon this contract of the defendant to purchase the bonds. It was unquestionably valid, at common law. The consideration was the agreement by the plaintiffs to receive the rail road bonds of the defendant in full discharge of the plaintiffs' demand against King, Stancliffe & Co., and the fulfillment of that agreement by the plaintiffs. This was a good consideration, and sufficient to uphold the agreement by the defendant to repurchase the bonds.

It is, however, objected on the part of the defendant that the contract was void for the reason that the same was not in writing. ° The statute is as follows: "Every contract for the sale of any goods, chattels or things in action for the price of fifty dollars or more, shall be void, unless, 1st. A note or memorandum of such contract be made, in writing, and be subscribed by the parties to be charged thereby; or, 2d. Unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in

action; or, 3d. Unless the buyer shall at the time pay some part of the purchase money." (2 *R. S.* 136, § 3 ; *Id. 5th ed. vol.* 3, *p.* 222.)

The case shows that the contract was not in writing. No part of the rail road bonds had ever been received by the defendant under the contract, nor any thing paid by him on account of it.

It seems to me that the contract was within the statute referred to, and was void for not being in writing. The only possible question there can be on the subject, arises from the fact that the contract for the sale of the bonds by the plaintiffs to the defendant was coupled with the contract that the plaintiffs would take the bonds in payment and satisfaction of their demand against King, Stancliffe & Co. But *that,* it seems to me, can make no difference in this respect. The whole arrangement comprises two entire and independent agreements. The one for the sale of the bonds by the defendant to the plaintiffs, or that the plaintiffs would accept and receive them in satisfaction of their demand against King, Stancliffe & Co.; and the other, that after the plaintiffs had so become the owners of the bonds, they would sell them back to the defendant at the same price they had advanced King for them. The former has been fully executed, but the latter remains open and executory. It is true that the first contract was the consideration for the second, but how that circumstance relieves the case from the difficulty in question is more than I can discover.

After the plaintiffs had received the bonds, in discharge of their demand against King, Stancliffe & Co., they were fully, absolutely and unconditionally vested with the title to them, and it was out of the power of the defendant to reclaim them without the consent of the plaintiffs. They were received by the plaintiffs at considerably below their nominal value. If they had risen in market to above their par value, after the plaintiffs had taken them, it is not to be supposed they would have requested the defendant to take them back at the price

at which they had received them. The agreement was that the defendant would, *at the request of the plaintiffs, take and purchase* the bonds, &c. The contract in this respect was one for the sale of the bonds by the plaintiffs to the defendant. It was none the less so that it bound the defendant absolutely to purchase them, provided the plaintiffs so requested, and left it optional with the plaintiffs to sell the bonds to the defendant at a price agreed upon. It was nothing more nor less than a contract to sell the bonds to the defendant after the plaintiffs should become invested with the title to them; and being invalid in consequence of not being in writing, and not being saved from the operation of the statute by either the 2d or 3d subdivisions of the section of the statute referred to, I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

E. DARWIN SMITH, J. Upon the ground upon which this case was put at the trial, I think the verdict cannot be maintained. In his charge to the jury, the circuit judge instructed them that if they found that the plaintiffs were at work for King, Stancliffe & Co. under their promise to pay, and that in settling with them the defendant induced them to take the bonds of the rail road company, upon his promise to take said bonds of them within a short time, and pay for them the amount of the debts due them for the graveling, then it was a valid obligation—a good promise—and the plaintiffs were entitled to recover.

In another part of the charge the judge said, "if King, Stancliffe & Co. owed this debt to the plaintiffs, and King induced the plaintiffs to take the bonds, on his promise to take them and pay for them, it was a valid contract, and the plaintiffs were entitled to recover."

The plaintiffs' right to recover in the action is thus based upon *contract;* not upon the original contract to pay the plaintiffs for their work, but upon the contract of the defendant to *purchase the bonds.* This was a contract to purchase

bonds of the nominal amount of $10,000 for the price of
$8207.75. This was by parol; "no note or memorandum
of it was made in writing and subscribed by the parties to be
charged thereby," nor did the buyer at any time pay any part
of the purchase money. It is a contract for the sale of
" things in action," and is thus within the express words of
the statute.

If there was a sufficient consideration for the contract at
common law, as the charge assumes, that would not save it
from the operation of the statute. It is nevertheless void.
(*Mallory* v. *Gillett*, 21 *N. Y. Rep.* 412.) Probably in most
of the cases where the statute declares the contract void, it
would not be invalid for want of a sufficient consideration.
The statute says, "if the contract is for the sale of goods,
chattels or things in action for the price of fifty dollars or
more, it shall be void, unless in writing," &c.

I can see no way to take the contract for the sale of the
bonds in question, out of the statute. It was claimed on the
trial that $100 was subsequently advanced upon the pur-
chase. This was not established in fact, and was not regard-
ed as proved, by the circuit judge, and the point was not
seriously made on the trial or here.

If the action had been for the original consideration, the
question might then have arisen in the light in which it was
presented by the counsel for the plaintiffs here, that this
agreement to take the bonds was merely a provisional ar-
rangement between the parties, and the defendant was not
discharged from the debt. If the question had been then put
to the jury whether these bonds were in fact actually taken
and received by the plaintiffs, absolutely in payment of the
debt, or conditionally only and for the benefit and accommo-
dation of the defendant, a verdict for the plaintiffs, in this
view, might possibly have been sustained. But the cause
was tried and presented to the jury upon a different theory.
It was tried as an action on the contract for the sale of the

Hagar *v.* King.

bonds, and the verdict cannot be sustained upon a different view of the plaintiffs' rights.

As the action is brought upon the contract for the purchase of the bonds, the plaintiffs were bound to prove a delivery or tender of the bonds at the time specified in the contract, and having done so, they would not be bound to prove that they kept them for the defendant. They would be entitled to sell them for the market value, and recover their damages for the refusal of the defendant to receive and pay for them, at the time, and for the price stipulated; or they might have kept the bonds for the defendant, ready to deliver at the trial, or at any earlier period when the defendant should become entitled to them. The claim of the defendant's counsel that the plaintiffs could not recover because there was no proof of a tender of the bonds, or of a demand upon him to fulfill the contract, it seems to me, was right, and the exception for the refusal of the judge to nonsuit the plaintiffs on·this ground well taken. Several other exceptions appear in the case, but as I think there should be a new trial, it is hardly worth while to discuss them, as they are points which may not again arise.

I think there should be a new trial, with costs to abide the event.

JOHNSON, J. dissented.

New trial granted.

[MONROE GENERAL TERM, September 1, 1862. *E. Darwin Smith, Johnson* and *Welles*, Justices.]