## MORSE v. DOUGLASS.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

FRAUDS, STATUTE OF—SALES OF GOODS—NATURE OF CONTRACT.

Where an agent, on selling stock for his principal, orally agreed with the purchaser to buy it back whenever the purchaser should become dissatisfied with it, there were two separate contracts with different parties, and the contract to buy it back was within the statute of frauds.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Frauds, Statute of, § 156.]

Appeal from Trial Term, Franklyn County.

Action by Alfred C. Morse against Ernest A. Douglass. From a judgment in favor of plaintiff, from an order denying defendant's motion to set aside the verdict and for a new trial, and from an order directing judgment for the plaintiff on the verdict, defendant appeals. Reversed, and new trial granted.

The action is brought to recover upon an alleged verbal agreement, entered into between the plaintiff and defendant, whereby the defendant agreed that, if the plaintiff would buy certain shares of the stock of the American Consolidated Copper Company, the defendant would take such shares back at any time the plaintiff was dissatisfied therewith and refund to him the amount he had paid therefor. It is alleged that the plaintiff, in reliance upon such agreement, purchased such stock, which afterwards turned out to be worthless; that it was tendered back to the defendant; and that he refused to take it and pay therefor. The evidence of the plaintiff showed that he purchased two installments of the stock, the first on June 20, 1902. With respect to that the plaintiff testified that the defendant said to him: "I am so confident of the genuineness of this copper stock that if you will buy 1,000 shares of this copper stock, if there ever comes a time when you are dissatisfied with this stock, I will take the stock off your hands and refund you the money." The defendant further testified that he bought the 1,000 shares, of the par value of $1,000, for 40 cents on the dollar, and paid $400 therefor when the certificates were delivered. With respect to the second sale, which was on February 25, 1903, the plaintiff testified that the defendant came to him again and said to him: " 'I want you to buy more copper stock. My brother, who is one of the directors of this company, has been here'—I will not say whether he said he had been here, or he had heard from him— 'and he has some more of that stock he is desirous of selling. I am desirous that my intimate friends should be purchasers, and therefore I want you to have some more of this stock, and I will stand behind this stock just as I stood behind the other. If there ever comes a time when you are dissatisfied with this stock, I will take it back and refund you your money.' Upon that statement I bought the stock, 500 shares for $300, and gave him my check." The plaintiff testified upon cross-examination that the defendant told him he was selling the stock for his brother, and that he knew, previous to his first purchase, that the defendant was selling the stock for his brother Walter. The principal office of the company was at Columbus, Ohio, and the certificates of stock were issued directly from there to the plaintiff. The plaintiff further testified: "After I paid for my first stock I had to wait, I should say from four to six days, to get the certificate, as I remember, I do not know why I had to wait so long for it. * * * I supposed he sent to Ohio in both instances to have the certificates made out to me. Q. And that he did not have any stock here to sell? A. He sent right to the company, as I understood it. Q. You knew he was selling it for his brother and the company? A. I supposed so." The defendant never owned any of the stock sold to the plaintiff, but he received a commission of 25 per cent. for selling. Plaintiff held the stock during a period of about two years, and during that time he received six dividends upon the first lot of stock and two dividends upon the second lot, amounting in all to $80. The defendant denied that he ever agreed to take back the stock or to re-

fund the money paid therefor, and testified that the only interest he had in the sale was the commissions he received therefor. The case was submitted to the jury, who found a verdict for the plaintiff for the full amount claimed, and from the judgment entered thereon the defendant has appealed.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

A. J. Nellis, for appellant.
Benjamin L. Wells, for respondent.

CHESTER, J. We must assume under the verdict of the jury that the facts are as testified to by the plaintiff, and that therefore the defendant made an oral agreement to take back the stock from the plaintiff and pay to him the amount he had paid therefor. The defense is that such an agreement is void under the statute of frauds. If there was but a single agreement involved in the whole transaction, the statute does not apply. If, on the other hand, there were two separate and distinct contracts—one that the plaintiff would buy the stock from the principal whom the defendant represented, and the other that the defendant would buy the stock back from the plaintiff at any time he became dissatisfied concerning it and refund him the money —then the statute would apply. I think it is altogether clear under the evidence that there were two separate and distinct agreements. The plaintiff knew that he was dealing with the defendant simply as an agent of a disclosed principal, and that when he agreed to buy the stock the title thereto was to come from the principal and not from the agent, and that the money paid therefor was paid through the agent to the principal. That arrangement was closed when the stock certificates were delivered and the consideration paid. In addition to this was the agreement between the plaintiff and the defendant to take back the stock. That was made with the defendant individually, and not with any one else. The contracting parties were different under the separate agreements. The case, therefore, falls squarely within the principles laid down in the case of Hagar v. King, 38 Barb. 200, and Chamberlain v. Jones, 32 App. Div. 237, 52 N. Y. Supp. 998.

In Hagar v. King copartners were indebted to the plaintiffs and one of the firm agreed by parol with the plaintiffs, in consideration that the latter would receive the bonds of a railroad company exceeding $50 in amount in payment of such indebtedness of the firm, he would at a future day at the plaintiff's request repurchase the same bonds of them and pay them therefor the amount of such indebtedness, for which the bonds were taken, and the court held that the agreement was within the statute of frauds, and void for the reason that it was not in writing and no part of the purchase money was paid. Wells, J., in writing the opinion of the court in that case, said:

"The whole arrangement comprises two entire and independent agreements. The one for the sale of the bonds by the defendant to the plaintiffs, or that the plaintiffs would accept and receive them in satisfaction of their demand against King, Stancliffe & Co.; and the other, that after the plaintiffs had so become the owners of the bonds they would sell them back to the defendant at the same price they had advanced King for them. The former has been fully executed, but the latter remains open and executory. It is true that

the first contract was the consideration for the second, but how that circumstance relieves the case from the difficulty in question is more than I can discover."

In Chamberlain v. Jones it was held that an oral promise by a party recommending to another the purchase of certain bonds of the value of over $50 from a third party, to repurchase and take back the bonds at the election of such other person, is a transaction distinct and independent of the purchase made by the latter upon the reliance of the promise, and is void under the statute of frauds. In that case Chamberlain sued to recover the purchase price of two bonds in a tunnel company, which she claimed to have purchased of such company in reliance upon an oral agreement made by the defendant that he would repurchase the same in the event that the plaintiff requested him so to do, and the court held that the two transactions were entirely distinct and independent. The defendant in that case did not own the bonds; nor did the defendant in this case own the stock which was the subject of the sale, and the court followed Hagar v. King in holding the promise void.

The plaintiff, in support of a contrary doctrine, cites numerous cases; but in all of them, except Johnston v. Trask et al., 116 N. Y. 140, 22 N. E. 377, 5 L. R. A. 630, 15 Am. St. Rep. 394, the defendants were the owners of the stock or bonds in question that were the subject of sale, and it was held in each case that but one contract was presented, and that the contract to take back the property and repay the purchase price was a part of the contract of sale and was not void by the statute of frauds. The case of Johnston v. Trask is not substantially different from the others, and is not counter to the principle decided in Hagar v. King and Chamberlain v. Jones; for in the Johnston Case, while the defendants were not in the first instance the owners of the bonds, they went out upon the order of the plaintiff and purchased them in the open market. The defendants themselves held the bonds until the purchase price and their commissions for purchasing were paid by the plaintiff, and then delivered them to him. There was no one known in the case except the plaintiff and the defendants. The latter were brokers, and were accustomed to purchase and carry securities on margin for their customers. The case was regarded by the court as one where the defendants were selling their own choses in action and it was held that there was but a single contract, and therefore that the promise of the defendants that they would take the bonds off the plaintiff's hands at what they cost him, upon request, was valid.

We think that the statute of frauds presented a complete defense to the contract sued upon in this case, and, therefore, that the judgment and orders appealed from must be affirmed upon the facts and reversed upon the law, and a new trial granted, with costs to the appellant to abide the event. All concur.