SCHWANKE and wife, Respondents, vs. DHEIN, Appellant.

*March 8—April 3, 1934.*

For the appellant there was a brief by *Fox & Fox* of Chilton, and oral argument by *Leo P. Fox*.

For the respondents there was a brief by *Strouf & Torrison* of Manitowoc, and oral argument by *A. D. Strouf*.

FRITZ, J. Defendant appealed from a judgment holding that plaintiffs were entitled to specific performance of an oral agreement under which defendant agreed to purchase from plaintiffs a promissory note secured by a mortgage on real property. Defendant challenges the court's findings of fact and conclusions of law in several respects. However, the evidence, although somewhat conflicting, affords ample support for the court's findings. Likewise, there is no error in the court's conclusions of law, excepting in one respect, which is fatal to plaintiffs' recovery. For the consideration of that error it is sufficient to note the following facts: Defendant, acting as a real-estate broker to sell a farm for Amelia Erickson, in negotiations conducted orally by defendant with the plaintiff, Albert Schwanke, procured him as a purchaser of the Erickson farm under an oral agreement that Albert Schwanke was to pay to Mrs. Erickson $3,500 in cash and to deliver to her his note for $10,000, secured by a mortgage on the land which she was to convey to him. In the course of those oral negotiations, and to enable Albert Schwanke to raise the required $3,500 in cash, it was orally agreed between Albert Schwanke and defendant that he would, within three months, sell for plaintiffs a promissory note for $13,000, secured by a mortgage on real property, which was owned by plaintiffs, and that if he failed to sell that note and mortgage within three months, defendant and his brother would purchase them from plaintiffs. Defendant suggested that in the meantime Albert Schwanke should borrow the required $3,500 for three months from some bank and pledge plaintiffs' $13,000 note and mortgage as security therefor; and, with defendant's aid, a loan of $3,500 was obtained from a bank, under those

conditions. The oral agreement for the purchase of Mrs. Erickson's farm was performed in all respects by Albert Schwanke and Mrs. Erickson, and she paid to defendant his commission as a broker out of the $3,500 which she received from Albert Schwanke. However, defendant never disposed of the $13,000 note and mortgage for plaintiffs, and he refused to perform his oral agreement to purchase them from plaintiffs.

Sec. 121.04, Stats. (which is part of the Uniform Sales Act), in so far as it relates to choses in action, is applicable to defendant's oral agreement to purchase that note and mortgage from the plaintiffs. That section, so far as here material, provides:

"(1) A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

. . . . .

"(3) There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specified goods."

In view of those provisions, as it is undisputed that defendant never accepted or received the note and mortgage, defendant's oral agreement to purchase them is not enforceable by action, unless defendant gave "something in earnest to bind the contract or in part payment." There is no basis for so holding under the facts in this case, unless defendant's performance of his services, as a broker for Mrs. Erickson, in effecting the sale of her farm, can be held to constitute the giving of something in part payment of his agreement with plaintiffs to purchase their note and mort-

gage. However, that cannot be done because, as a matter of law, defendant's agreement ,to purchase the note and mortgage from plaintiffs is an agreement separate and independent from Mrs. Erickson's agreement with defendant to pay him a broker's commission for effecting the sale of her farm, as well as from the agreement between Albert Schwanke and Mrs. Erickson for the sale of that farm, even though that sale was negotiated and effected on her behalf by defendant. Consequently, neither the performance of the separate and independent agreement between defendant and Mrs. Erickson, nor the performance of the separate and independent agreement between her and Albert Schwanke, constitutes the giving of something in earnest by the defendant to bind the oral agreement between him and plaintiffs, or such part payment or part performance of that agreement as to render it enforceable by action, whether the remedy sought is at law or in equity. In that respect, the situation of the parties in the case at bar is analogous, in so far as the legal considerations involved are concerned, to the situations of the parties in *Hagar v. King,* 38 Barb. (N. Y.) 200, 205; *Morse v. Douglass,* 112 App. Div. 798, 99 N. Y. Supp. 392; *Chamberlain v. Jones,* 32 App. Div. 237, 52 N. Y. Supp. 998; *Boardman v. Cutter,* 128 Mass. 388.

In *Hagar v. King, supra,* on a sale of bonds to plaintiffs by a copartnership of which defendant was a member, defendant orally agreed that he, individually, would repurchase the bonds from plaintiffs. Subsequently he refused to perform and defended on the ground that the oral agreement was unenforceable under the statute of frauds. In sustaining that defense, the following was said in one of the opinions on the appeal (p. 206) :

"The case shows that the contract was not in writing. No part of the railroad bonds had ever been received by

the defendant under the contract, nor anything paid by him on account of it.

"It seems to me that the contract was within the statute referred to, and was void for not being in writing. The only possible question there can be on the subject arises from the fact that the contract for the sale of the bonds by the plaintiffs to the defendant was coupled with the contract that the plaintiffs would take the bonds in payment and satisfaction of their demand against King, Stancliffe & Co. But that, it seems to me, can make no difference in this respect. The whole arrangement comprises two entire and independent agreements. The one for the sale of the bonds by the defendant to the plaintiffs, or that the plaintiffs would accept and receive them in satisfaction of their demand against King, Stancliffe & Co.; and the other, that after the plaintiffs had so become the owners of the bonds, they would sell them back to the defendant at the same price they had advanced King for them. The former has been fully executed, but the latter remains open and executory. It is true that the first contract was the consideration for the second, but how that circumstance relieves the case from the difficulty in question is more than I can discover."

In *Morse v. Douglass, supra,* an agent, on selling shares of stock for his disclosed principal, orally agreed with the purchaser to buy back the stock whenever the purchaser became dissatisfied with his purchase. It was held that the agreement to sell the principal's stock to the purchaser, which was duly performed, and the contemporaneous agreement of the agent who negotiated the sale to repurchase the stock from the purchaser, were two separate and independent contracts between different parties, even though they resulted from the same negotiations, and related to the sale and repurchase of the same stock; and that the agent's unperformed oral contract to repurchase was within the statute of frauds and unenforceable. That was the rule prior, as well as subsequent, to the enactment of the Uniform Sales Act. However, on behalf of plaintiffs it is

contended that the word "action," in the clause "shall not be enforceable by *action*," in sec. 121.04 (1), Stats., was intended to mean an action at law; and that, consequently, the inhibition in that section in respect to the enforcement of contracts which are within the statute of frauds is applicable only to the enforcement of such contracts in actions at law. That contention is erroneous. It is in direct conflict with the express provision in the Uniform Sales Act that—

"In this act, unless the context or subject matter otherwise requires: 'Action' includes counterclaim, setoff and suit in equity. . . ." Sec. 121.76 (1), Stats.

Furthermore, sec. 260.02, Stats., expressly provides that all remedies in courts of justice, whether at law or in equity, are "actions," unless they are special proceedings; and sec. 260.08, Stats., provides:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, have been abolished, and there is in this state but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, which is denominated a civil action."

Consequently, under the established practice in this state, the word "action" includes remedies in equity as well as remedies at law. *Wisconsin River Imp. Co. v. Pier,* 137 Wis. 325, 329, 118 N. W. 857; *Jansen v. Town of Schoepke,* 214 Wis. 350, 253 N. W. 554. When an oral contract is not enforceable by an action, because of inhibitions in sec. 121.04, Stats., the bar is applicable to the remedies in equity, as well as to the remedies at law.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.