Savage *v.* O'Neil.

---

[SCHENECTADY GENERAL TERM, May 3, 1864. *Potter, Bockes, James* and *Rosekrans,* Justices.]

---

ANN SAVAGE *vs.* EDWARD O'NEIL.

A married woman claiming the benefit of our statutes, passed in 1848 and 1849, for the more effectual protection of the rights of married women, must show that she was a resident of this state, at a time and under circumstances to entitle her to such benefit.

A person coming to this state, from a foreign country, six years ago, and who has since resided here, is entitled to the full benefit of all our local statutes governing the rights of citizens.

The acts of 1848 and 1849 did not, and could not, take away the right of a husband, married in 1847, in his wife's personal property and choses in action.

The disability of coverture which existed at common law, precluding husband and wife from contracting with each other, was not taken away by those statutes, but still exists.

In the absence of proof on the subject, the presumption is that the same laws, in relation to husband and wife, and their relative rights, existed throughout the civilized world, that prevailed here, at common law, before the passage of the acts of 1848 and 1849.

It was impossible, at common law, and still is, for husband and wife to make any valid contract with each other. And the rule in respect to all grants, conveyances, gifts or transfers from husband to wife, remains as it was at common law. All such transfers of real or personal property are absolutely void.

Accordingly *held,* that a pretended sale by a husband to his wife, of a stock of goods in a store, being null and void, passed no title to the wife, but the property remained his, and might lawfully be levied on by his creditors, upon execution.

Savage *v.* O'Neil.

THIS was an action of trespass, brought against the defendant for taking a quantity of goods from a store in the city of Rochester. The plaintiff is the wife of Maurice A. Savage. The defendant justified the taking as a constable, by virtue of executions and judgments against the husband. The proof showed that for two years prior to January 2d, 1862, Maurice A. Savage was the owner of the store of goods, and conducted the business. The wife testified that on that day her husband executed a bill of sale to her of the goods, for a debt of $1220, owing to her for money lent him. She got the money from her mother, in Russia, when she was twenty-one years old. They were natives of Russia, and lived there till six years ago. She was married sixteen years ago. After the sale, Savage was gone for a few days, then came back, and has sold the goods regularly since. The defendant proved two judgments, docketed in March, 1862, recovered upon notes made by Maurice A. Savage, in October and November, 1861. The defendant asked for a nonsuit, on the ground that the transfer of the goods from the husband to the wife was invalid, and gave her no title. The court denied the motion, and the defendant excepted. The court then held that the defendant was limited to the two questions, whether there was actual fraud, and as to the value of the property. To this the defendant also excepted.

The jury found a verdict for the plaintiff for $277.33. A stay of proceedings was granted for sixty days, to enable the defendant to make a case to be heard in the first instance at general term.

*T. Frothingham*, for the defendant. The counsel for the defendant asked the court to charge that the sale from the husband to the wife was void. I. The refusal of the court so to charge was error. The action was a common law action, tried by common law rules. At law, the husband and wife are still regarded as one person, and they cannot make a valid contract together. Prima facie the sale was

void, and the defendant had a right to the charge; as requested. (*Van Arsdale* v. *Dixon, Lalor's Sup.* 358. *White* v. *Wager,* 25 *N. Y. Rep.* 328. *Garlick* v. *Strong,* 3 *Paige,* 440. 6 *Wend.* 13.)

II. The sale being void in law, it was incumbent on the plaintiff to prove it good in equity. There is no fact shown to prove the equity of the wife. The parties were married in Russia, sixteen years ago, and were natives of Russia, and had always lived there till six years ago. The money was received by her there. The presumption is that the common law prevailed. There is no presumption that our statute law extends beyond the state. By the common law the money belonged to the husband, and was liable to his creditors. But if our statutes do apply, there is no proof to show that the money was acquired by her since 1848. (*See Holmes* v. *Broughton,* 10 *Wend.* 75; *Starr* v. *Peck,* 1 *Hill,* 270; *Davis* v. *Garr,* 2 *Seld.* 124.)

III. The proof shows affirmatively that there was no actual and continued change of possession. Unless the statute is a nullity, the defendant was entitled to the charge as requested, at folio 55, viz: "That if the court holds that the husband could sell to the wife, then that the continued possession of the property in the husband, without any change of possession, as the sale in this case, raises the presumption that the sale is fraudulent, and that as against these creditors, it is absolutely void unless shown to be in good faith." (2 *R. S.,* 4th ed., 317, § 5. *Griffin* v. *Marquardt,* 17 *N. Y. Rep.* 29. 10 *id.* 309.)

*A. J. Wilkin,* for the plaintiff. 1. The defendant's counsel asked for a nonsuit, and also asked the court to charge the jury, that as a matter of law, the husband could not turn out property to his wife, to pay an honest debt which he owed her. Or, in other words, could not hand back to her property which he held in trust for her, and which was her separate property. The notes were given for money actually

loaned. The goods were turned out to pay that indebtedness, before any lien or right of the execution creditor attached. Under the circumstances, it is settled that the wife's equity will be protected against her husband's creditors. (*Garlick v. Strong*, 3 *Paige*, 440. *Partridge* v. *Havens*, 10 *id.* 618. *Wickes* v. *Clarke*, 8 *id.* 161. *Shaffner* v. *Reuter*, 37 *Barb.* 44. *Westervelt* v. *Gregg*, 2 *Ker.* 202.)

II. The money was the separate property of the wife ; the fact of loaning it to her husband, he giving his notes to repay it to her, shows that there was no intention on her part to give it to him, but that it should remain her's ; that he held it as her trustee, and paid it back before any right or lien attached. He did what equity would have compelled him to do. (*Cases above cited. See also, Stuart* v. *Comstock*, 24 *Barb.* 411. *Patridge* v. *Havens*, 10 *Paige*, 618. 1 *Penn.* 327. 6 *Watts & Serg.* 290. 5 *Wheaton*, 138. *Merritt* v. *Lyon*, 3 *Barb.* 110.) If he had a right to pay back the money thus loaned, the form of payment is immaterial. (*Livingston* v. *Livingston*, 2 *John. Ch. R.* 537. 7 *id.* 57.)

III. The court was asked to charge, as a matter of law, that the continued possession of the property in the husband, without any change of possession, as the sale in this case, raised a presumption that the sale was fraudulent, &c. The court refused so to charge, and very properly, because it called upon the court to decide the question of fact, that there was no change of possession, which was untrue in fact, for there was a change. There was all the change that could be made under the circumstances. (*Talman* v. *Smith*, 39 *Barb.* 390. *Allen* v. *Cowan*, 23 *N.Y. Rep.* 502. *Merritt* v. *Lyon*, 3 *Barb.* 110. 26 *id.* 419.)

IV. As to whether the money belonged to the husband by the law of Russia. 1st. There is no evidence that she was married in Russia, that she ever lived there ; all the evidence on the subject is, that "when she was twenty-one, she brought the money with her, given to her by her mother, which was about six years ago." It does not appear that she

or her husband ever were subjects of Russia. But there was no evidence what the laws of Russia were, upon this subject. The presumption is, that they are the same as our laws, in absence of proof. (*Monroe* v. *Douglass, 5 N. Y. Rep.* 447. 15 *Wend.* 314. 1 *Duer,* 367. 6 *Wend.* 475. 6 *Cowen,* 404, 429. 22 *Barb.* 118. 13 *N. Y. Rep.* 31. 15 *id.* 353. 2 *Duer,* 419. 3 *Barb.* 20.)

*By the Court,* E. DARWIN SMITH, J. Whatever may have been the rights of the plaintiff in respect to the money which she testifies she received from her mother, I think the questions presented for our decision in these exceptions do not necessarily involve a decision of that question. The plaintiff was a married woman, and was married in the year 1847, and before the passage of the acts in this state enlarging the rights of married women in respect to the holding of separate property.(*a*)   The plaintiff testified that she was married sixteen years before the trial, which was in October, 1863, and that she received the money in question from her mother, in Russia. That she left Russia six years before, and received the money when she was twenty-one years of age. What her age was at the time of her marriage, or at the time of the trial, does not appear. If the plaintiff is to be deemed, upon this evidence, to have been a subject of the Russian empire at the time of her birth or marriage, I do not see any ground upon which she could have the benefit of our statutes for the more effectual protection of the rights of married women, passed in 1848 and 1849. I think we must presume that the same laws exist in relation to husband and wife and their relative rights, throughout the civilized world, that existed here at common law, before the passage of these acts. A married woman, claiming the benefit of these acts, must show that she was a resident of this state at a time and under circumstances to entitle her to such benefit. The

(*a*) Laws of 1848, p. 307 ; Laws of 1849, p. 528.

plaintiff testified that she left Russia six years ago. If she then came to this state, and has since resided here, she is entitled to the full benefit of all our local statutes governing the rights of citizens. Conceding to her such rights, as if she were a resident of this state at the time of her marriage, in 1847—which is certainly the most favorable view of her rights that can be.taken—I do not see how, she can recover in this action.ᵛ At that time, by the common law which prevailed in this state, the husband, upon marriage, became entitled to all the personal property of the wife, however acquired, or all she might thereafter acquire. (*Ryder* v. *Hulse,* 24 *N. Y. Rep.* 372.) The acts of 1848 and 1849 did not and could not take away the right of the husband in his wife's personal property and choses in action. (*Westervelt* v. *Gregg,* 2 *Kernan,* 202.) If it were distinctly proved that this money came to the wife since the passage of those acts, the case would be otherwise. But this does not appear, and I think is not to be implied. A party claiming the benefit of these acts must bring herself within them by proper proof. But this question does not dispose of the action. Whatever may have been the rights of the plaintiff to the money received of her mother, she could not acquire title to the property for which this action was brought, from her husband. The disability of coverture which existed at common law, which precluded husband and wife from contracting with each other, was not taken away by those statutes, and still exists. It was impossible, at common law, and still is, for husband and wife to make any valid contract with each other. The maxim of the common law is that husband and wife are one person. They can no more make a valid contract with each other than a man can contract with himself. This rule can only be evaded by the intervention of a trustee, to sustain any conveyance or transfer from one to the other. This question has recently been very carefully considered in the court of appeals, in the case of *White* v. *Wager,* (25 *N. Y. Rep.* 330,) where the doctrine is fully

Savage *v.* O'Neil.

asserted in respect to a conveyance of land, that husband and wife cannot convey to each other, 'and that the statutes of 1848 and 1849, above mentioned, have not varied the law or affected the question. At common law, if the wife acquired personal property after marriage, we have seen the title immediately vested in her husband; and this could only be prevented by a settlement to her sole and separate use. The statutes of 1848 and 1849 do change this rule of the common law, and enable a married woman to take property, real and personal, by gift, grant, devise, or bequest, from any person *other than her husband.* This exception or qualification, leaves the common law rule in full force, and unaffected, so far as it relates to grants, conveyances, gifts or transfers from husband and wife. In respect to all such transfers, the rule remains as at common law. All such transfers of real or personal property are absolutely void. It follows from this rule of law, that the pretended sale by the plaintiff's husband to her, of the personal property in controversy in this suit, was null and void; that no title passed from the husband to the plaintiff; and the property being confessedly his, before such pretended sale, remained his; and the same might lawfully be levied upon by the defendant, on execution. I can see no escape from this conclusion, and consider that the judge erred in holding otherwise at the circuit; and for this error there must be a new trial.

New trial granted.

[MONROE GENERAL TERM, September 5, 1864. *Welles, J. C. Smith* and *E. Darwin Smith,* Justices.]