White *v.* Knapp.

———————•●•———————

## WHITE and BUELL *vs.* KNAPP.

Courts are not at liberty to indulge in any presumption as to what the legislation of another state or country has been, or what statutes it may have enacted. They will not presume that the statute law of another state is the same as that of their own. *Per* WELLES, J.

Where there is no evidence to the contrary, it will be presumed that the *common law* is in force in each of the other states, (except possibly Louisiana.) If it has been abrogated, changed or modified by a statute of another state, it must be proved either in the way provided by the acts of congress, or by that contained in section 426 of the Code.

Parties having entered into an agreement in writing, for the sale and purchase of real estate, embracing an oil well, steam engine, &c. at the option of the purchasers within a specified time, the vendor, to induce the purchasers to

White *v.* Knapp.

take the property, agreed with them by parol, before the time limited had expired, that if they would accept the property, and pay him the purchase money according to the terms of the written agreement, they might take the engine and try it, and if they found it would not answer their purpose, he would take it back, and pay or allow the purchasers $1000 for it. *Held* that the parol agreement in respect to the engine was not for an absolute sale thereof, but for a sale coupled with a condition that it should answer the purpose of the purchasers; and that as that condition was not complied with, the engine was never purchased by them, and the title remained in the vendor.

Accordingly *held* that such parol agreement was not void under the statute of frauds, as being a parol agreement for the sale of goods of the value of $50 or more.

MOTION by the plaintiffs for a new trial, on exceptions ordered to be heard at the general term in the first instance. The complaint set forth the following agreement in writing signed by the parties :

*"Rochester, Sept. 25, 1865.*

Whereas, W. H. Knapp and Nelson Andrews own the lease No. 12, on Complanter farm, Venango county, Pa., on which is a dwelling house, derrick, walking-beam and usual fixtures, new and in running order ; also a ten horse Watertown engine, drilling tools, cable, rope, and other neccessary fixtures for drilling ; also a well, drilled five hundred and thirty-seven feet (537) in good order.

Now, therefore, the said W. H. Knapp hereby agrees to sell all the above described improvements and property, and all the interest of the said Knapp and Andrews in said lease and well, said lease being for one half the oil for the term of fifteen years, and to give the usual lease, title valid in law, for the same, to H. E. White and John K. Buell, for the sum of $12,000, on conditions, as follows: Said White and Buell to deposit at the date, at the Traders' Bank of Rochester, $1000, for the refusal of the above property, until next Saturday noon, when if said White and Buell shall elect to close the purchase, they shall give said Knapp an order for the thousand dollars deposited, which is to apply on the purchase money, the balance to be deposited at the same place,

one third in five days from the said Saturday, one third in ten days from said Saturday, and the balance in five days thereafter, when the title is to be made and the whole amount paid ; and it is provided that if the usual title in legal form is not made as above, or the property substantially as represented above, then none of the purchase money is to be paid, and the one thousand dollars for the refusal refunded by said Knapp, unless the said White and Buell shall elect not to take the property on next Saturday, when the matter shall be determined as above provided, and no title required. The said White and Buel to pay for all tubing and fixtures for pumping said well, and said Knapp to allow his superintendent to oversee the tubing of the same free of charge, the said White and Buell to pay labor and other incidents to pumping ; and in case the said White and Buell shall elect on next Saturday noon, or before, not to take the lease and property, they are to give the said Knapp an order on the Traders' Bank for one thousand dollars, and this contract to be of no further effect. The work of preparation for tubing said well to be continued until the said Saturday, by said Knapp, at his expense, the same as if this contract had not been made. In witness, &c."

The plaintiffs alleged, in their complaint, that after the making of said contract, and before the following Saturday, the parties went to the property and examined it, for the purpose, by the plaintiffs, of determining whether they would take the same, under and by virtue of the contract ; and thereupon the defendant, to induce the plaintiffs to take the property, under and by virtue of the contract, agreed with them that if they would accept said property, including the engine, and pay him therefor the said sum of $12,000, according to the terms of the contract, the plaintiffs might take the said engine and use it until they were satisfied whether it would answer their purpose or not ; and that if, after using the same, it did not answer their purpose, or they were not satisfied that it would answer their purpose, he would take said engine back

and pay, or return, to the plaintiffs, the sum of $1000. That relying upon such promise and agreement, and accepting the same, the plaintiffs received the said property, and paid the defendant therefor, according to the terms of the agreement. That shortly thereafter they commenced the use of said engine upon said lease, for the purpose for which they desired and had received it, and for some time thereafter continued to use, or try to use it, for that purpose, but that the same was not adapted to, and had not sufficient capacity to perform, the work for which they desired and had received it; and that it could not be made to answer their purpose, and was worthless and of no value to them. That the plaintiffs had repeatedly informed the defendant that the engine did not answer their purpose, and requested him to take the same, and pay them the said sum of $1000; but that said defendant had neglected and refused to do either; wherefore the plaintiff demanded judgment for $1000 with interest.

The answer admitted the execution of the contract in writing, first made, but denied the making of the second agreement, or that the engine did not answer the purpose, and insisted upon several matters by way of set off.

On the trial the plaintiffs gave evidence tending to show that said contract was executed on a Saturday, at the city of Rochester; that after being executed, it was left with the Traders' Bank, of said city, for safe keeping, that on the Monday or Tuesday following, the parties went to Pennsylvania to examine the property, and upon such examination the plaintiffs had some doubts in respect to the engine; that on Thursday or Friday before the Saturday specified in the contract, the defendant requested the plaintifis to decide, then, whether they would accept the property according to the terms of the contract; this was at Rouseville, within one and a half mile of the property; that the plaintiffs stated they were satisfied with the property, except the steam engine, which they feared would not answer their purpose, and was defective; that the defendant then stated to the plaintiffs that if

they would decide to take the property then, instead of wait-ing, they might try the engine, and if on trial it did not answer the purpose of the plaintiffs, he, the defendant, would take back the engine, and pay or allow for the same the sum of $1000 ; that the plaintiffs thereupon agreed to take back the property upon that condition ; that the moneys agreed to be paid by the plaintiffs were paid by them, and the lease mentioned in the contract was assigned to them ; that the plaintiffs took possession of the property, and after trying the said engine, they found it would not answer their purpose, and gave notice thereof to the defendant, and returned the engine to him, and demanded the sum of $1000, which sum he refused to pay, or to accept the engine.

The plaintiffs having rested their case, the defendant moved for a nonsuit, on the grounds : 1. That the defend-ant's agreement to take back the engine, and pay therefor the sum of $1000, was without consideration, and void. 2. That the agreement was void by the statute of frauds, for the reason that there was no memorandum in writing, no part of the purchase price paid by the purchasers at the time, and no delivery of any part of the property.

The court nonsuited the plaintiffs on the ground secondly mentioned, to which decision the plaintiffs excepted.

*W. F. Cogswell,* for the appellants.

*M. S. Newton,* for the respondent.

*By the Court,* WELLES, J. The agreement, for a breach of which the action was brought, was made in the state of Pennsylvania, where it was to be performed, and where the subject matter of it was situated ; and it is not denied that its validity must be determined by the law of that state.

Assuming that the contract is void in consequence of not being in writing, it is so by reason of the statute of frauds of this state. By the common law it was a valid contract, and

there is no evidence that by any statute of the state of Pennsylvania such a contract was required to be evidenced by writing. We are not at liberty to indulge in any presumption as to what the legislation of another state or country has been, or what statutes it may have enacted. To presume that the statute law of another state is the same as that of our own, would be, as it seems to me, the height of absurdity. In a given case, the statutes may be, and they may not be similar to ours. If they are, and a party wishes to avail himself of them in the courts of this state, it is a very easy thing to prove it. That we have a particular statute, containing particular provisions, is not any evidence —not even *prima facie*—that another state has a statute with like provisions. Were it otherwise, it would follow that we are bound to presume that every one of our sister states has enacted all the general laws contained in our massive tomes of session laws ; and by the same rule the courts of each state would be bound to presume the same thing in regard to the statutes of each of the other states.

The 426th section of the Code defines how the statutes and written laws, and also the unwritten or common law, of any other state or territory, or foreign government, may be proved. The former, by the printed copies of the volumes of such statutes, &c. properly identified to be such, and the latter may be proved as facts by parol evidence ; and the section declares that the books of reports of adjudged cases in their courts may also be admitted as presumptive evidence of such unwritten law.

The rule, as I have always understood it to exist in this state is, that where there is no evidence to the contrary, it will be presumed that the *common law* is in force in each of the other states, except possibly the state of Louisana, and that no such presumption will prevail in regard to statute or written law. . If the common law has been abrogated, changed or modified by a statute of another state, it must be proved, either in the way provided by the acts of congress, (*chap.* 11,

*of 2d sess.. 1st Cong. U. S. Stat. at large, p.* 122, *and chap.*
56 *of 8th Cong.* 2 *id. p.* 298,) or by that contained in section
426 of the Code.

The statute of frauds, as it now exists in this state, has
undergone repeated changes since its first enactment, and if
the presumption referred to is to prevail, it follows that each
of the other states which had a statute of frauds has made
the same changes in its statutes. But there is reason to
believe that neither the English statute of frauds (29*th chap.*
2, *chap.* 3,) nor any of its amendments were ever enacted in
Pennsylvania, prior to the year 1809. In the year 1808, the
legislature of that state passed an act referring it to the
Supreme Court to report what English statutes were in force
there, and to recommend the adoption of such of those not in
force as in their opinion ought to be enacted. By the report
of the Supreme Court, made in pursuance of the act, it
appears that the statute of frauds of England had never been
in force in Pennsylvania ; and although the court recom-
mended the passage of many English statutes not then in
force, they omitted to recommend the statute of frauds.
(*Purdon's Dig. vol.* 1, *p.* 32, § 2. 3 *Binney's Rep.* 595.)
We are without evidence of any statute of frauds in Penn-
sylvania, and if there is one, we have no means of knowing
what are its provisions.

Whether the agreement in question was within the statute
of frauds of this state presents an important question. The
sale of the engine by the defendant to the plaintiffs was never
absolute. It was coupled with a condition that the plaintiffs
should take it upon trial, and if it did not answer their pur-
pose, the defendant would take it back, and pay or allow
the plaintiffs $1000 for it. There was, in fact, no sale
of the engine, except what was contained in the previous
written contract, which was connected with a condition that
the plaintiffs should elect, by 12 o'clock at noon of the follow-
ing Saturday, to take the engine, with the other property
mentioned, and if they did not so elect, they should forfeit

White *v.* Knapp.

the $1000 deposited in the Traders' Bank. In short, it was a contract by which the plaintiffs secured the refusal to purchase all the property specified therein, and for such refusal they agreed to pay the $1000 at all events ; and if they should elect, by the time agreed upon, to take the property described, the $1000 should be allowed as part payment of $12,000 to be paid for the whole. The plaintiffs never elected to purchase the engine ; but, as remarked, took it upon trial. If it answered their purpose it was to be a purchase of that, as well as the other property. That was the substance and the legal effect of the second or parol contract. The engine did not answer the plaintiffs' purpose, and therefore it was never purchased by them. The title to it is still in the defendant. The plaintiffs have never received it, except for the purpose of trial. They have paid the $12,000 for which they were to have the engine, with the other property. For this deficiency in the property received by the plaintiffs, which they were to have for the $12,000 paid, the defendant has, in effect, agreed to deduct or refund $1000, which he now refuses to do. The statute under which the defendant seeks to avoid the parol agreement in question relates to the *sale* of goods, &c. (2 *R. S.* 136, § 3.) The plaintiffs are not suing upon a contract of sale, but for money overpaid upon the purchase by them of certain other property. There was ample consideration for the agreement upon which the action is brought. The plaintiffs had one or two days left within which to determine their election to take the property under the written contract, and their agreement to take it before the time had expired, was sufficient to uphold the defendant's agreement in relation to the engine.

For the foregoing reasons, I think there should be a new trial, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, March 4, 1867.   *Welles, E. Darwin Smith* and *Johnson,* Justices.]