Bradley *v.* The Mutual Benefit Life Insurance Company.

---

Lucius Bradley, Executor, &c., Appellant, *v.* The Mutual Benefit Life Insurance Company, Respondent.

(General Term, First Department, November, 1870.)

Where the law of a foreign country or State is a subject of inquiry in State courts, the *lex fori*, other than statutory, will be presumed to be the existing law in such foreign country or State, unless evidence is given to the contrary.

And it seems that the court is at liberty, on appeal, to refer to the statute law of another State to ascertain what law should control on the question before it.

Where a policy of life insurance contained a clause, which made it void "in case the insured should die by his own hand, in or in consequence of a duel, or by reason of intemperance from the use of intoxicating liquors, or by the hand of justice, or in the known violation of any law of these States, or of the United States;" and the insured, being in Louisiana, attempted to enforce the collection of a debt by taking property from his debtor's possession by force; and, the latter seizing him, was struck by, and thereupon shot and killed the insured; in an action upon the policy,—*Held*, that the insured died, within the meaning of the exception, in the known violation of a law of the State of Louisiana, and that the policy was void.

And that this was so, although no proof had been given as to the law of Louisiana with regard to the act committed.

Per Ingraham, J. The exception was intended to prevent the insured from doing any act in violation of law which would naturally lead to a conflict, by which his life would be endangered.

One Cluff had a policy of insurance from the defendants on his life, which policy was duly assigned to B. E. Clark & Co., about the time of its making, and afterward by that firm to

the testator of the plaintiff, on 10th April, 1861, of which notice was given to the defendants.

The policy contained a clause which made the same void, " in case the insured should die by his own hand, in or in consequence of a duel, or by reason of intemperance from the use of intoxicating liquors, or by the hands of justice, or in the known violation of any law of these States, or of the United States, or of the said provinces, or of any other country." The premium was regularly paid, up to the time of the death of Cluff.

Cluff had a claim against one Cox, and, on meeting him in the street in a town in Louisiana, requested payment. This was refused. Cox also stated that he was about leaving the place. Cluff said, " If you don't pay it, I will take your horses." Cox said, " You had better try it." Thereupon Cox proceeded to unhitch the horses from the wagon, and was about cutting the reins, when Cox started off, and, on getting behind the wagon (Cluff having the lines in his hand), Cox drew his pistol and shot Cluff, so as to cause his death. He died within a short time after being wounded. Other facts appear in the opinion.

This action is to recover on the policy, and is defended by the company upon the ground that, at the time of his death, he was in the known violation of the law of that State in which the parties were at the time, and therefore the policy was void.

Upon the trial of the case, the court held that there was no question of fact for the jury, and declined to submit any question to them, and dismissed the plaintiff's complaint, ordering the exceptions to be heard in the first instance at the General Term. The plaintiff appealed to this court.

*Benedict & Benedict*, for the appellant.

*Alvin C. Bradley*, for the respondent.

Present—Ingraham, P. J., Cardozo and G. G. Barnard, JJ.

INGRAHAM, P. J.    There can be no doubt as to the cause of death in this case, or the means by which it was produced; and, so far as this branch of the case was under examination, there was no question of fact involved which required any finding of the jury.    That Cluff was attempting to take possession of the property of Cox, in order to enforce the payment of a debt, and that, while he was engaged in that act, he was shot by the person whose property he was taking, is not disputed.

Two questions, however, are involved in the decision of this case, viz., whether the exception in the policy applies to any other violation of law than a felonious act, and whether the act in which Cluff was engaged was a violation of law under the laws of Louisiana.    Upon the latter question there is no evidence; and it is contended by the plaintiff that the rules of the common law must be considered as in force, and controlling this case, unless it is proved that a different law is in force in the State where the death of Cluff took place.

In *Reese* v. *The Mutual Benefit Life Insurance Company* (23 N. Y., 516), the general principle is stated, that the common-law is presumed to exist in another State, unless the contrary is proven.    In *White* v. *Knapp* (47 Barb., 549), WELLS, J., states the rule to be, that it will be presumed that the common-law is in force in each of the other States, except possibly the State of Louisiana.    If it has been abrogated or changed by a statute, it must be proved in the way provided by acts of congress, or by that in the 426th section of the Code.

In *Savage* v. *O'Neil* (42 Barb., 374), SMITH, J., says: "We must presume that the same laws exist throughout the civilized world that existed here at common-law;" and, in that case, the presumption was held to apply to Russia.

In *Holmes* v. *Boughton* (10 Wend., 75), SAVAGE, Ch. J., says: "This court cannot take judicial cognizance of any of the laws of our sister States at variance with the common-law."

The principle upon which these cases rest is, that the courts will presume the same law to exist in other countries as exists

here, other than statute law, unless the existence of contrary law is proven. The fact that Louisiana never was under the government of Great Britain would not destroy that presumption. This rule is fully stated by ALLEN, J., in *Throop* v. *Hatch* (3 Abb. Pr. R., 23), and cases referred to in his opinion. The same rule has been adopted by the courts of Louisiana in reference to the other States of the Union, notwithstanding there the civil and not the common-law prevailed. In *Crozise* v. *Hodge* (3 Mill. Louisiana R., 359), the court said: "We are not authorized to decide a case on the laws of Pennsylvania; for there is no evidence on the record that they differ from our own. We have repeatedly decided that the laws of other States must be proved by evidence. When they are not so proven, we must decide the case by our own law." In *Arago* v. *Currell* (1 Miller's Louisiana R., 540), the court say: "We have been referred to a note in Cowen, in which the reporter professes to bring together the different cases on this head. One of them shows that the courts of Massachusetts presume the common-law in New York to be the same as in their own State; another, that Heywood's reports were received as evidence of the common-law in North Carolina. The principle on which these cases are decided appears to be true, and the reasoning drawn from them correct. When a court knows nothing of the laws of a country, it presumes them to be the same as those of its own. This is the general rule; and the presumption rests on the ignorance in which it is of any other.

These cases all agree in approval of the rule. that, where the law of a foreign country or another State is a subject of inquiry, the law of the State where the question arises, other than statute law, will be presumed to be the law existing in such State or foreign country, unless evidence is given to show what the law actually is.

There is no hardship in enforcing this rule, since the adoption of the Code, because it is provided therein (§ 426) that the statutes, code, or written laws, of any State or country shall be proved in the courts of this State from the printed volumes

published by authority thereof; and the books of reports may be admitted as presumptive evidence of the unwritten or common law. In the absence of any such proof, we are justified in presuming the law of Louisiana to be the same with the law of this State, and that whatever would be a violation of law here may, for the purposes of this case, be considered a violation of law there.

But, even if there was any doubt on this rule, under the decisions of the Court of Appeals we may look into the statute law of Louisiana, and ascertain what law does control on the subject of crime in that State. In *Cutter* v. *Wright* (22 N. Y., 472), DAVIES, J., says: "There can be no question that we are at liberty to look into the statutes of the State to ascertain the rate of interest in the State of Florida. I think it clear that it was competent on the argument to refer to such volume of the laws as evidence of the laws of that State, without further proof." On reference to the Revised Statutes of Louisiana (p. 160), it will be seen that the common-law of England is adopted as the law by which all crimes are to be taken, intended and construed.

That the act Cluff committed was a violation of law, there can be no doubt. He attempted to enforce a claim which was disputed by taking possession of Cox's property without his consent, and by superior force. That it was a trespass, no one can doubt. That it was taking the property of another against his will by force in a manner which might, under ordinary circumstances, be considered to be a felonious taking, must also be conceded. Cluff had no right, title or claim to the property. There was no ground on which his possession could have been sustained, or his act justified or excused; and the act of Cox in firing at him was justifiable, unless we are prepared to hold that a man is quietly to submit to have his property taken from him by force in the public highway without any authority. It seems to me, therefore, that the evidence clearly establishes that Cluff, at the time of his death, was engaged in doing what was a known violation of law, and that his death was the consequence of such violation.

The question then arises, whether this was a known viola-
tion of law within the meaning of the exception in the policy.
The portion of the exception applicable to this case is as fol-
lows : "In case he shall die by his own hand, in or in conse-
quence of a duel, or by reason of intemperance from the use
of intoxicating liquors, or by the hands of justice, or in the
known violation of any law of these States, or of the United
States, &c., this policy shall be void." I have already sug-
gested the difficulty of distinguishing the act which Cluff
committed from a felonious taking. It was without author-
ity, or the least pretence of right. It was against the will
of the owner, whose right was admitted ; and it was done
by superior force. But, conceding this to have been only a
misdemeanor or trespass, was such an act within the meaning
of the exception in the policy ? It is contended by the plain-
tiff that the maxim, "*noscitur a sociis*," is applicable, and,
therefore, that the act must be a felonious one which resulted
in the death. It can hardly be said that that maxim would
warrant such a construction. The acts excepted are, 1st, sui
cide ; 2d, a duel ; 3d, drunkenness ; 4th, by execution for
crime ; 5th, in the known violation of any law. Of these
acts, it cannot be said that all are of a felonious character.
Drunkenness certainly is not a felony, nor are the words rela-
ting to a violation of law ordinarily understood as limited in
their meaning to a criminal offence.

I am aware that the Supreme Court of Massachusetts have
construed this exception as confined to a death while engaged
in the commission of a felony or misdemeanor. At the same
time, it is said, if the insured was guilty of an assault upon
Cox, and he was shot while engaged in its commission, it came
within the exception, and the court awarded a new trial, to
have that question passed upon by the jury.

The plaintiff in the present case read in evidence, under a
stipulation, a deposition, from which it appears that, after Cluff
commenced taking the horses from the wagon, Cox resisted his
acts by seizing him by the throat, and that Cluff knocked him
off, when Cox ran three strides from the wagon and fired. From

this evidence it is apparent that Cluff was the aggressor in seizing the horses; that the seizure by Cox was justifiable for the purpose of preventing Cluff from taking away the horses; that the blow struck by Cluff was an unjustifiable assault, and brought the case within the law as laid down by the supreme court of Massachusetts in the case referred to.

Another deposition was also read in which the witness testified he did not see the striking. But this did not create any conflict of testimony. Both were put in evidence by the plaintiff, and are entitled, therefore, to credit, and they are easily reconciled together. It is a matter of constant occurrence in examining witnesses as to an affray, to find that one witness saw acts not seen by another, owing to the position of the parties, or the attention being called off to other matters. Not having seen some parts of an affray is no proof that matters testified to by another witness as seen by him are not true.

If this testimony is believed, then Cluff was guilty of an assault, as before stated, and would have been engaged in the violation of a law of such a character, as is stated in the case in 13 Allen, to bring the act within the exception of the policy.

I cannot concur in those views, which limit the violation of the laws to criminal acts, but construe this exception as intended to prevent the insured from doing any act in violation of law, which would naturally lead to a conflict by which his life would be endangered. It made no difference to the insurer whether the insured violated the law by committing a burglary, a larceny, or merely a trespass, if the consequences following or connected with it, would lead to a loss of life from the protection which the owner of the property had a right to resort to. The object was not to prevent the commission of a crime, but to prevent the doing an act calculated to excite the angry passions of another, resulting in the death of the insured. Had the policy provided for insuring the insured party from being killed by a person whose property he intended to take from him by violence, without right such

a contract would be void; and where the exception is sufficiently broad to cover such acts, it seems wholly unwarranted to uphold what could not be sustained if there was an express contract to do so.

It was suggested on the argument, that the act of Cluff was not one which was the proximate or adequate cause of his death. It was the provocation which lead to the act of the owner. Without the seizure of the horses, there would have been no shooting; and although Cox may have gone beyond what would have been justifiable, in taking the life of Cluff, there can be no doubt that what he did do was in defence of his rights of property, if not of person, which Cluff was at the time violating. There is no difference between a killing, while a man is committing a misdemeanor or a felony, so far as relates to the cause of the killing. In either case where the man injured, acts in protecting his property, the motive and intent, and moving cause is the same. I can see no difference where the offensive act is a trespass, or an assault, or a threat to do an injury. If in either event, death should follow, the violation of law would be the moving cause just as much in one case as the other, and the character of the act of killing, whether justifiable or not, could not be used to interpret the exception.

The judgment should be affirmed.