COENRAAD DE WAAL, Appellant, *v.* WILLIAM A. JAMISON and Others, as Copartners, Doing Business under the Firm Name of ARBUCKLE BROTHERS, Respondents.

First Department, March 23, 1917.

Statute of Frauds — sale of goods over fifty dollars in value — oral agreement of vendee to resell goods at specified price — when contract not enforcible — "earnest" defined — writing not constituting memorandum within meaning of Statute of Frauds.

Where the plaintiff sold to the defendants a certain number of bags of sugar at the market price per pound on a specified day, upon the oral promise of the defendants to sell to the plaintiff a like amount of sugar at the same price within ten days thereafter as might be demanded by the plaintiff, the defendants' promise is not enforcible by reason of the Statute of Frauds relating to a sale of goods over fifty dollars in value, if there is no claim that any of the goods to be sold by the defendants were delivered to or accepted by the plaintiff, or that any part of the purchase price had been paid.

The prior sale of sugar by the plaintiff to the defendants at market price cannot be deemed a part payment of the price of the sugar to be sold to the plaintiff by the defendants, although, *it seems*, that if the sale had been at a price less than the market price a different question might arise.

Moreover, the prior sale by the plaintiff to the defendants cannot be deemed to be something given in "earnest" to bind the contract within the meaning of the statute.

The general statement that a part performance takes a contract out of the Statute of Frauds is not entirely accurate. Such part performance must be made within the terms of the statute itself, or at least it must leave the party in a condition where to enforce the statute would constitute a fraud.

A letter written to the defendants by the plaintiff which in substance stated that the plaintiff had advised certain persons to deliver to the defendants a certain number of bags of sugar expected to arrive within a few days by a certain steamship, which sugar was to be held for later

return, which letter was O. K.'d by an agent of the defendant, did not constitute a written memorandum of the sale within the requirements of the Statute of Frauds.

"Earnest," defined.

Dowling and Laughlin, JJ., dissented, with opinion.

Appeal by the plaintiff, Coenraad De Waal, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 22d day of March, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Joseph M. Proskauer*, for the appellant.

*William N. Dykman*, for the respondents.

Smith, J.:

The contract here sought to be enforced is a contract to sell to the plaintiff upon the 11th day of August, 1914, 10,000 bags of sugar at two and nine-thirty-seconds cents per pound. The defendants plead the invalidity of the contract under the Statute of Frauds. The facts of the case, as must be assumed upon the dismissal of plaintiff's complaint, are that the plaintiff sold to the defendants 10,000 bags of sugar at the market price of two and nine-thirty-seconds cents per pound upon the third day of August, upon the promise of the defendants here sued upon to sell to the plaintiff a like amount of sugar at the same price within ten days thereafter, as might be demanded by the plaintiff. The Statute of Frauds upon which the defendants rely is found in section 85 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45), as added by chapter 571 of the Laws of 1911. Subdivision 1 of that statute applicable to the facts of the case at bar reads as follows: " A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same; or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." It is not claimed here that any of these goods have been delivered or accepted by the

plaintiff or that any part of the purchase price of two and nine-thirty-seconds cents per pound has been paid therefor. The expression used in the statute, "or give something in earnest to bind the contract" has a well-defined legal meaning. In "Words and Phrases Judicially Defined" (Vol. 3, p. 2302) "earnest" is defined as "payment of part of the price of goods sold, or a delivery of part of the goods, for the purpose of binding the contract. The idea of 'earnest' in connection with contracts was taken from the civil law. As used in the Statute of Frauds providing that sales of personalty of over a certain value shall be void unless there be a memorandum in writing or the purchaser receive and accept the same, or give something in earnest, 'earnest' means a part payment of the price." (Citing authorities.) The sale to the defendants upon August third of the plaintiff's sugar at the market price cannot be deemed in any way a part payment of the price of the sugar promised to be delivered by the contract sued upon. If that sale had been at a price less than the market price a different question might arise, which it is not necessary here to consider, but when that sale was made at the market price at which the goods could have been bought by the purchaser from other vendors or at which the goods could have been sold to other purchasers, it is inconceivable that such sale could in any way be deemed "the giving of something in earnest to bind the defendant's contract," or "in part payment thereof." In *Johnston* v. *Trask* (116 N. Y. 136) the defendants, who were bankers and brokers, purchased certain bonds for plaintiff under an oral contract by which they agreed that if the plaintiff should thereafter become dissatisfied, they would on demand take the bonds off his hands at what they cost him. Upon payment of the purchase price and their commissions defendants delivered the bonds to plaintiff, who thereafter tendered them back and demanded the price paid, and on defendants' refusal to accept and pay for the same, brought action for breach of contract. It was there held that said provision in the agreement was not a contract for the sale of goods, chattels or things in action within the Statute of Frauds, but was a provision for the rescission of the entire contract, and so was valid. The appellant in this case makes no claim that this is

a contract for rescission, because the contract is not to redeliver to the plaintiff the identical property that was sold by the plaintiff to the defendants. In *Williams* v. *Burgess* (10 A. & E. 499) there was an oral agreement for the sale of a mare for twenty pounds, coupled with a covenant to sell it back for twelve pounds. The agreement to resell for twelve pounds was there held not to be within the Statute of Frauds, and it is claimed that this could not have been on the theory of rescission because the price was not the same. But in that case it was for a resale of the identical property originally sold. LITTLEDALE, J., in deciding that case, said: " Plaintiff is willing to part with his property on certain conditions, which are part of the agreement. It is not an independent contract of sale on which he sues, but the original contract, *which was a qualified sale.*" In *Lumsden* v. *Davies* (11 Ont. App. 585) the plaintiff bought tea of the defendant on defendant's agreement to buy back the unsold portion oh a certain date at an advance of ten cents per pound. The Statute of Frauds was pleaded, and BURTON, J. A., in writing for the court, says: " Further reflection has, however, led me to the conclusion that the defendant's promise is not an independent original contract, but rather a part of the same contract by which the plaintiffs agreed to become the purchasers of the tea, and by which the plaintiffs' purchase became a *qualified and not an absolute purchase.*" Here, too, was an agreement to repurchase a part of the very article sold, and was sustained only upon the principle that the agreement to repurchase qualified the original sale of the article itself. In *Morse* v. *Douglass* (112 App. Div. 798) the defendant, agent of a disclosed principal, agreed with the plaintiff that if the latter would purchase certain stock from defendant's principal, he, the agent, would repurchase it from him subsequently if he became dissatisfied with the purchase. This was held to be a separate and independent contract, void by the Statute of Frauds, notwithstanding the agreement was to purchase the very article sold. But the agreement was made by a third party. The same principle is announced in *Boardman* v. *Cutter* (128 Mass. 388). No case has been cited, and I have been able to find none, in which an agreement to sell at a specified price any property not originally purchased

from the party seeking to enforce the contract has been held to be taken out of the Statute of Frauds by reason of the sale of other property made to the promisor, although such sale might have been an inducement to the making of the promise sued upon.    The general statement that a part performance takes a contract out of the Statute of Frauds is not entirely accurate.    That part performance must be made within the terms of the statute itself, or, at least, it must leave the parties in a condition where to enforce the statute would itself constitute a fraud. · If I have properly interpreted the statute there cannot be claimed here to have been the giving of anything in earnest to bind the contract or in part payment, and the sale by plaintiff to the defendants of the sugar upon August third at the market price gives the plaintiff no equitable right to claim that he has been defrauded by the failure of the defendants to perform the promise thus made unenforcible by the statute.

It is further contended that the writings in this case may, when considered together, answer the requirement of the statute.    This is based upon a letter written to the defendants by the plaintiff upon August third, as follows:

" Messrs. ARBUCKLE BROTHERS,

" Old Slip & Water Street,

" New York City:

" DEAR SIRS.— We have advised Messrs. Francke, Hijos & Company to deliver to you 10,000 bags Centrifugals expected to arrive within the next few days per S/S ' Syndic.'    As per agreement with your Mr. Kennedy these are to be held for later return."

That was O. K.'d by some agent of the defendants.    The difficulty with the appellant's contention is that there is nothing in writing to indicate what was the agreement with Mr. Kennedy, nor is there in the paper itself anything to indicate what date could be supplied for the " later return," specified in the letter.

The judgment should be affirmed, with costs.

CLARKE, P. J., and SHEARN, J., concurred; LAUGHLIN and DOWLING, JJ., dissented.

DOWLING, J. (dissenting):

The complaint herein is framed upon the theory of one contract between the plaintiff and defendants by which the plaintiff agreed to deliver to defendants 10,000 bags of sugar (expected to arrive at the port of New York within a few days after August 3, 1914), in consideration whereof the defendants were to pay therefor at the rate of two and nine-thirty-seconds cents per pound, cost and freight, and as a part of the same transaction, and in further consideration of such promise on plaintiff's part, defendants agreed to replace said sugar within a reasonable time thereafter by delivering to the plaintiff an equal amount of sugar (to arrive by steamer to be later designated by the defendants) at the same price of two and nine-thirty-seconds cents per pound, cost and freight, plaintiff agreeing to accept delivery thereof and to pay for the same at that price. It is alleged that the plaintiff caused the 10,000 bags of sugar to be delivered to the defendants on or about August 5, 1914, the date of arrival, for which the defendants paid; that thereafter the same number of bags of sugar were on August 11, 1914, designated by defendants for delivery to plaintiff, then being *en route* or about to be shipped by the steamship *Vigilancia;* that when the steamship arrived on August 17, 1914, the plaintiff demanded the delivery to him of the said sugar, which the defendants refused to do and repudiated their agreement, although the plaintiff was ready, able and willing to perform the terms of the agreement on his part; all to his damage in the sum of $105,000.

The complaint having been dismissed at the close of the plaintiff's case, the view of the facts most favorable to him must be taken. Having introduced testimony establishing the cause of action set forth in the complaint, the plaintiff also showed that the transaction in question was not unique or extraordinary in the sugar business, but one having a definite trade existence, and known as "switching," whereby a party having sugar ready for delivery is willing to exchange it for sugar to arrive later, the party with whom he contracts having immediate use for the sugar, and he himself desiring to use the same amount later. By this practice those who need the goods at once are able to get them at a fixed price, mutually

agreeable, without going'into the market, and the return of a similar amount of goods at the same price is insured. Neither the complaint nor the plaintiff's testimony tends to establish two independent contracts, one for the sale by the plaintiff to defendants of 10,000 bags of sugar and the other for the sale by defendants to plaintiff of a like amount of sugar; on the contrary, the proof, in my opinion, sustains the plaintiff's theory that this was one entire contract for the delivery of a certain amount of sugar at a fixed price and for the return of the same amount at the same price. Of this entire contract, there has been part performance by the delivery of the first 10,000 bags of sugar by the plaintiff to defendants and payment therefor by the defendants. This, I think, takes the contract out of the statute and leaves the plaintiff in a position to recover his damages for its breach by the defendants. In *Johnston* v. *Trask* (116 N. Y. 141), Chief Judge FOLLETT begins his opinion by saying: "An oral contract, by which a person sells his own chattels or choses in action for more than $50, payment and delivery being made, and agrees to take them back from and repay the purchase-price to the purchaser on demand, is an entire contract, and the promise to take back the property and repay the purchase-price is not void by the third section of the Statute of Frauds.* (*Wooster* v. *Sage*, 67 N. Y. 67; *Fitzpatrick* v. *Woodruff*, 96 id. 561; *White* v. *Knapp*, 47 Barb. 549; *Williams* v. *Burgess*, 10 A. & E. 499; *Fay* v. *Wheeler*, 44 Vt. 292; *Dickinson* v. *Dickinson*, 29 Conn. 600; 1 Benj. on Sales [Corbin's ed.], § 169.)" While later on in the opinion he holds that the oral contract of the defendants in that case — that they would purchase bonds for the plaintiff in the market at the market rates, and in case he thereafter became dissatisfied with them they would, on demand, take them off his hands at what they cost him — was a single contract, and the promise of the defendants to so take such bonds was not a contract for the sale of goods but a provision for the rescission of the entire contract, still he in no way qualified what he said at the outset of his opinion. Nor, as it seems to me, is the application of the principle affected by the fact that the identical goods in the case at bar are not to be taken back, but goods of a precisely

---

* See 2 R. S. 136, § 3.— [REP.

similar kind and nature are to be returned at the same price. As is said in Williston on Sales (p. 83): "Satisfaction of the statute by acceptance and actual receipt of part of the goods or by part payment makes the entire bargain of the parties enforceable, even though the bargain contains as a part of it another agreement to sell besides that which has been partly performed. Thus if the seller of goods agree as part of the original bargain to take them back if desired, this agreement to repurchase becomes enforcible by the acceptance and receipt or payment by the buyer."

There being evidence from which a jury would have been justified in finding that this transaction was one which had a definite and settled place in the sugar trade, and that it constituted an entire contract which had been partly performed by the delivery and payment for the original 10,000 bags of sugar, I believe the dismissal of the complaint was erroneous and that the judgment appealed from should be reversed, with costs, and a new trial granted.

Laughlin, J., concurred.

Judgment affirmed, with costs.